IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PATRICK HATELY,<br><br>                               *Plaintiff,*<br><br>v.<br><br>DAVID WATTS,<br><br>                             *Defendant.* | Case No. 1:17-cv-00502 (AJT/JFA) |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, Plaintiff PATRICK HATELY ("Plaintiff" or "Hately"), by and through undersigned counsel, and respectfully moves this Court to deny Defendant DAVID WATTS' ("Defendant Watts" or "Watts") Motion to Dismiss Plaintiff's Counts I, III, IV, and V for failure to statute a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, Plaintiff states as follows:

### THE PRIOR ACTION

On September 7, 2016, Plaintiff filed Case No. 1:16-cv-01143 (the "Prior Action") in this Court. *See* Prior Action, Dkt. # 1. Plaintiff alleged that NICOLE TORRENZANO ("Torrenzano" or "Defendant Torrenzano") and Defendant Watts had violated the Computer Fraud and Abuse Act ("CFAA"), the Stored Communications Act ("SCA"), and three provisions of the Virginia Computer Crimes Act ("VCCA"). *See id.* Shortly thereafter and before a responsive pleading was due, on October 6, 2016, "Plaintiff [voluntarily] dismisse[d], without prejudice, Defendant Dr. David Watts . . ." Prior Action, Dkt. # 7 (emphasis in original).

The litigation in the Prior Action continued without Watts, with Defendant Torrenzano filing a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 24, 2016, *see* Prior Action, Dkt. # 10, and Plaintiff amending the pleadings as a matter of course on November 4, 2016, *see* Prior Action, Dkt. # 21. On November 11, 2016, Defendant Torrenzano moved to dismiss the First Amended Complaint. *See* Prior Action, Dkt. # 23.

When the Court was fully briefed, "[t]he Court granted Defendant's second motion to dismiss *without prejudice* as to the CFAA claim (Count I) and the three Virginia Computer Crime Claims (Counts III, IV, and V)." Prior Action, Dkt. # 86, p. 3 (after-the-fact detailing of the Court's decision in Prior Action, Dkt. # 30, which granted Defendant Torrenzano's Motion to Dismiss in part) (emphasis added). The Court explained its rationale further:

> The Court dismissed the CFAA claim because Plaintiff failed to sufficiently allege that he incurred over $ 5,000 in losses or damages cognizable under the CFAA, which pursuant to 18 U.S.C. § 1030(g) is the statutory threshold for bringing a CFAA action. Although defendant moved to dismiss the [VCCA] Claims on multiple grounds, the Court dismissed the [VCCA] Claims because Plaintiff failed to sufficiently allege how he sustained any injury to person or property by reason of a violation of the [VCCA].

*Id.* In dismissing Plaintiff's claims without prejudice, the Court adjudged that although inadequately pled, the claims were not, on their face, meritless or frivolous.

On February 13, 2017, Plaintiff moved the Court to Amend the First Amended Complaint and accept the Second Amended Complaint as the operative pleading, which Defendant Torrenzano opposed. *See* Prior Action, Dkt. # 33; *see* Prior Action, Dkt. # 43. Plaintiff sought to re-introduce his claims under the CFAA and VCCA by offering additional evidence of damages, as well as to once again designate Watts as a party to the proceedings. *See id.*

Oral arguments on the topic of the amendment were heard before the Honorable Magistrate Judge Michael Nachmanoff on March 17, 2017, who issued a preliminary ruling denying

Plaintiff's motion. *See Prior Action*, Dkt. # 48. On March 24, 2017, Magistrate Judge Nachmanoff

issued a formal Report & Recommendation, *see Prior Action*, Dkt. # 58, outlining his justification

for concluding that amending the pleadings was inappropriate. *See id.*

As the District Court judge – the Honorable Judge Gerald Bruce Lee – explained in his

Memorandum Opinion and Order affirming the Magistrate's preliminary ruling, *see Prior Action*,

Dkt. # 86, Magistrate Judge Nachmanoff found two separate bases for his denial:

> There are two issues before the Court. The first issue is whether the Court should
> accept the Magistrate Judge's recommendation to deny Plaintiff's Motion to
> Amend based on the ground that granting Plaintiff's Motion would prejudice
> Defendant, prejudice a non-party that Plaintiff voluntarily dismissed from this suit
> and seeks to rename as a defendant, or prejudices both. Upon *de novo* review, the
> Court adopts the Magistrate Judge's recommendation to deny Plaintiff's Motion to
> Amend *because Plaintiff's attempt to amend the complaint would cause undue*
> *prejudice to Defendant.*
>
> The second issue is whether the Court should accept the Magistrate Judge's
> recommendation to deny Plaintiff's Motion to Amend based on the ground that
> amending the complaint would be futile because it would still fail to sufficiently
> allege damages. Because the Court finds that amending the complaint would
> prejudice Defendant and the Court will analyze damages under the SCA at the
> summary judgment stage, *the Court need not address whether amending the*
> *complaint would be futile.*

*Id.* at pp. 1-2 (emphasis added). Judge Lee reached no conclusion as to the futility of Plaintiff's

proposed amendments, nor did he address the topic of prejudice as to Watts in being re-named.

Instead, Judge Lee firmly based the denial of Plaintiff's Motion to Amend upon a single issue:

"Plaintiff's attempt to amend the complaint would cause undue prejudice to Defendant." *Id.* at p.

1.

Ultimately, Plaintiff's single remaining claim against Defendant Torrenzano – a violation

of the SCA – was tried before a jury. *See Prior Action*, Dkt. # 128, 129, 130. Despite the Defendant

admitting, under oath, that she had access his accounts, Plaintiff was unsuccessful on the claim,

purportedly due to the heavily litigated "backup" element of the Stored Communications Act. *See*

Prior Action, Dkt. # 133. Plaintiff did not pursue an appeal because of the costs in doing so. Moreover, Plaintiff had separately and lawfully filed a state court action against Torrenzano for the existing state law claims. The action is ongoing.

## THE CURRENT ACTION

The present litigation was begun by the filing of Plaintiff's Complaint on April 28, 2017. *See* Dkt. # 1. All five of Plaintiff's initial claims from the Prior Action are alleged therein, but with key differences. Those differences are: (1) the claims are alleged against Defendant Watts only; and (2) the claims reflect Plaintiff's (Proposed) Second Amended Complaint from the Prior Action – which included additional evidence of monetary loss and damages, *see* Prior Action, Dkt. # 31-1 – rather than either the Complaint or the First Amended Complaint from the Prior Action, *see* Prior Action, Dkt. # 1; Prior Action, Dkt. # 21.

Defendant Watts filed a Motion to Dismiss for Failure to State a Claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), *see* Dkt. # 7, and this Opposition thereto follows.

## ARGUMENT

"The purpose of a motion to dismiss under Rule 12(b)(6) is 'to test the sufficiency of a complaint.'" *Rodriguez v. Indymac Mortg. Servs., FSB*, 2013 U.S. Dist. LEXIS 39053, at *4 (D. Md. 2013) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"In considering a motion to dismiss a complaint for 'failing to state a claim upon which relief can be granted,' a court must construe the complaint in the light most favorable to the plaintiffs, read the complaint as a whole, and take the facts asserted therein as true." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 627 (E.D. Va. 2000) (quoting Fed. R. Civ. P. 12(b)(6); citing *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Higgins v. Medical College*, 849 F. Supp. 1113, 1117 (E.D. Va. 1997)). "All reasonable inferences must be made in favor of the nonmoving party, and 'a count should be dismissed only where it appears beyond a reasonable doubt that recovery would be impossible under any set of facts which could be proven.'" *Id.* (quoting *America Online, Inc. v. Greatdeals.Net*, 49 F. Supp. 2d 851, 854 (E.D. Va. 1999); citing *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"'Motions to dismiss under the doctrines of *res judicata* and collateral estoppel are properly reviewed under the standard for Rule 12(b)(6).'" *Amr v. Va. State Univ.*, 2011 U.S. Dist. LEXIS 110747, at *22 (E.D. Va. 2011) (quoting *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 684 (E.D. Va. 2008)). "Although an affirmative defense such as res judicata may be raised under 12(b)(6) 'only if it clearly appears on the face of the complaint,' [] when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior proceeding when the res judicata defense raises no disputed issue of fact []." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (internal citations omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)); (citing *see Day v. Mosco*, 955 F.2d 807, 811 (2d Cir. 1992); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Briggs v. Newberry County Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992), *aff'd*, 989 F.2d 491 (4th Cir. 1993) (unpublished)).

## I.      THE PRIOR ACTION IS IMMATERIAL TO THE CURRENT ACTION.

### A.  *Defendant has mischaracterized the relevant doctrine as issue preclusion, or collateral estoppel, rather than the correct doctrine of claim preclusion, or res judicata.*

Defendant Watts seeks to rely upon issue preclusion, otherwise known as collateral estoppel, in his insistence that Defendant Torrenzano's pretrial success in the Prior Action – *i.e.*, her prevailing prior to trial on four out of five of Plaintiff's claims – also be imputed to himself. *See* Dkt. # 7, pp. 5-6 (laying out the factors that must be present in order for a party to assert the defense of issue preclusion, followed by the contention that, when it is applied to the facts of the present litigation, issue preclusion demands that this Court reach "the undeniable conclusion that Counts I, III, IV, and V of the Complaint should be dismissed, with prejudice").

Defendant Watts is certainly correct that he is only entitled to rely upon the doctrine of collateral estoppel, rather than the doctrine of *res judicata*, in ascribing any of the results of the Prior Action to the Current Action. *See infra*. However, because none of the Court's rulings on the four claims dismissed prior to trial were on their actual merits, the only doctrine that can be utilized to preclude those four claims in subsequent litigation, such as the Current Action, is *res judicata*. *Res judicata* may only be claimed by actual parties to the litigation – here, the Prior Action – and becomes inapplicable when either the defendant or plaintiff shifts. As such, neither doctrine allows Watts to point to the exclusion of four out of five of Plaintiff's claims in the Prior Action and demand that the same result be reached here.

### 1.  **Defendant is not entitled to assert the doctrine of *res judicata*, and the doctrine of collateral estoppel is without effect on the Current Action.**

"Res judicata (or claim preclusion) precludes the assertion of a claim after a judgment on the merits in a prior suit by the parties or their privies based on the same cause of action." *Martin*

*v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 650 (4th Cir. 2005) (citing *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004)).

"The doctrine of claim preclusion, not to be confused with issue preclusion or collateral estoppel, holds that a prior decision dismissed on the merits is binding in all subsequent litigation *between the same parties* on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not." *Northern Assur. Co. of Am. V. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 1999) (internal quotation marks omitted) (emphasis added) (quoting *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 397 (2d Cir. 1997); citing *see also* Restatement (Second) of Judgments § 19 (1982) ("'A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.'")). "The import of claim preclusion is that it operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction *against the same defendant* that could have been brought at that time." *Id.* (emphasis added).

Thus, "[a] lawsuit is barred by res judicata when three elements have been satisfied: (1) there was a prior final adjudication on the merits; (2) the two actions involve either the same parties or persons in privity with those parties, and (3) the cause of action identified for resolution in the subsequent proceedings either is identical as to the cause of action in the first proceeding or is such that it could have been resolved in the prior action, had it been presented." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 397 (4th Cir. 2006) (citing *Slider v. State Farm Mut. Auto. Ins. Co.*, 557 S.E.2d 883, 887 (W.Va. 2001)).

As Defendant Watts was a named party to the Prior Action for less than one month and was never a named party at the time of any of the operative Motions or Orders, and because

Defendant Watts is not and was not in privity with Defendant Torrenzano, *see infra*, Defendant Watts may not claim the doctrine of *res judicata* to bar the Current Action.

"The doctrine of collateral estoppel," on the other hand, "precludes relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311-12 (4th Cir. 1987) (citing *see, e.g.*, *Thomas v. General Services Administration*, 794 F.2d 661, 664 (Fed. Cir. 1986); *National Labor Relations Board v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir. 1985); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir. 1985)). "Unlike *res judicata*, '[c]ollateral estoppel . . . does not always require that the parties be the same.'" *Blake v. Rubenstein*, 2016 U.S. Dist. LEXIS 142927, at *43 (S.D. W.Va. 2016) (alterations added by district court) (quoting *State v. Miller*, 194 W.Va. 3, 9 (1995)).

"In order to apply the doctrine [of collateral estoppel], the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum."

As the issues Defendant Watts seeks to preclude were not actually determined in the Prior Action – which necessarily means that the determination thereof was not a necessary part of the decision in the Prior Action – and the judgment reached in the Prior Action was final and valid *only with regards to Defendant Torrenzano*, the availability of collateral estoppel is of no benefit to Watts in the Current Action.

*a. Defendant Watts was not a party to the prior action at the time of <u>any</u> of the operative Motions or Orders, and Plaintiff's voluntary dismissal, <u>without prejudice</u>, of Defendant Watts from the Prior Action does not bar Plaintiff's bringing of the Current Action against him.*

As was established, *supra*, Plaintiff voluntarily dismissed Defendant Watts, without prejudice, from the Prior Action on October 6, 2016. *See* Prior Action, Dkt. # 7. Defendant Watts consented to said dismissal, also without prejudice, on October 17, 2016. *See* Prior Action, Dkt. # 9. During all subsequent litigation in the Prior Action, beginning with Defendant Torrenzano's first Motion to Dismiss on October 24, 2016, *see* Prior Action, Dkt. # 10, Plaintiff and Defendant Torrenzano were the only two parties to the action.

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), a "plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment". This requirement pertaining to timing was satisfied in the Prior Action. *See* Prior Action, Dkt. # 7 (stating that "Defendant has not served an answer or a motion for summary judgment").

Rule 41 also provides that, "[u]nless the notice or stipulation states otherwise, the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(B). In the Prior Action, both Plaintiff and Defendant Watts went so far as to explicitly state that the dismissal was without prejudice, reinforcing the point. *See*, Prior Action, Dkt. # 7, 9.

In *Semtek Int'l Inc. v. Lockheed Martin Corp.*, the Supreme Court attempted to pin down the meaning of a dismissal without prejudice:

> The primary meaning of "dismissal without prejudice," we think, is dismissal without barring the defendant from returning later, to the same court, with the same underlying claim. . . . Thus, Black's Law Dictionary (7th ed. 1999) defines "dismissed without prejudice" as "removed from the court's docket in such a way that the plaintiff may refile the same suit on the same claim," *id.*, at 482, and defines "dismissal without prejudice" as "[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period," *ibid.*

531 U.S. 497, 505-506 (2001) (citations in original) (alterations added). The Court delved into interpretations of Rule 41, citing 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4435, p. 329 n.4 (1981), as noting that "without prejudice" is used as the opposite of and in contrast to "adjudication on the merits."

In *Northern Assur. Co. of Am. v. Square D Co.*, the Second Circuit looked at facts similar to those present in the Current Action. 201 F.3d 84 (2d Cir. 1999). The Court in *Northern* went to great lengths to assure the district court of the propriety of allowing a second suit against a *different* defendant where the claims were based upon the same set of facts and circumstances as a first suit against another defendant:

> [The plaintiff] was not required to bring its claims against [the new defendant] in [the prior action] because they are independent claims. [The plaintiff] has separate and distinct causes of action against each defendant since [the first defendant and the new defendant] allegedly are joint tortfeasors and are not in privity. [The plaintiff] has "as many causes of action as there are defendants to pursue." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4407, at 52-53 (1981); *see* Restatement (Second) of Judgments § 29 cmt. a (1982) (for preclusion purposes "the claim against others who are liable for the same harm is regarded as separate"); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d Cir. 1995) (quoting Wright, Miller & Cooper and the Restatement). If [the plaintiff] chose to sue one defendant, but not the other, the unadjudicated claim would survive the first judgment, because "when a litigant files consecutive lawsuits against separate parties for the same injury, the entry of a judgment in the prior action does not bar the claims against other potentially liable parties." *Central Hudson Gas*, 56 F.3d at 367; *see also White v. Kelsey*, 935 F.2d 968, 970 (8th Cir. 1991) ("A claim is not terminated against one person who may be liable for a loss by a judgment against another person liable for the loss.").

*Id.* at 88-89 (citations and parentheticals in original) (alterations added) (footnotes omitted).

Plaintiff's voluntary dismissal of his claims against Defendant Watts in the Prior Action, without prejudice, made Watts a non-party to the Prior Action. As the Court of Appeals for the Second Circuit and the Supreme Court make clear, *supra*, claims voluntarily dismissed without

prejudice against a defendant – or those claims that have yet to be asserted against a defendant –

may be properly alleged again – or for the first time, as the case may be – at any time within the

statutory limitations. Plaintiff's suit against Watts in the Current Action is proper, and the dismissal

of Watts from the Prior Action has no effect thereon.

> b. *The dismissal of Plaintiff's claims as to Defendant Torrenzano in the Prior Action,
> <u>without prejudice</u>, was not a decision on the merits of the claims and has no effect
> upon the Current Action against Defendant Watts.*

Defendant Watts cites *Massengale v. Graystone*, 175 F.3d 1015 (4th Cir. 1999), an

appellate decision affirming a district court ruling, and one without a published opinion, for the

proposition that "a dismissal for failure to state a claim is a judgment on the merits." Dkt. # 7, p.

8. In the corollary published, two-paragraph *per curiam* decision, *Massengale v. Graystone*, 1999

U.S. App. LEXIS 4806 (4th Cir. 1999), the Court writes: "Because this was a judgment on the

merits, the district court properly dismissed the case with prejudice." *Id.* at *1-2 (citing *see*

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)).

Defendant Watts cites to *Mas v. Coca Cola Co.*, 198 F.2d 380, 381 (4th Cir. 1952) for the

same proposition. There, the plaintiff "had a door of a court of equity closed in his face because of

fraud," *id.*, and then sought to obtain relief through "the simple device of beginning again and

labeling his suit an action at law for damages," *id.* The Fourth Circuit affirmed the district court's

dismissal of the plaintiff's new suit, explaining:

> [T]he dismissal of the former suit attacking the action of the Patent Office []
> operates as an estoppel upon plaintiff on the principal of res judicata, since the court
> in its order of dismissal did not provide that it should not so operate. In the absence
> of such a provision, a dismissal, other than for lack of jurisdiction or improper
> venue, "operates as an adjudication upon the merits."

*Id.* (internal citation omitted) (alterations added).

As both decisions make clear, when a court seeks to determine the merits of a case on a motion to dismiss, a dismissal *with* prejudice is appropriate, and where a court does not designate the dismissal as otherwise, a dismissal will be assumed to be with prejudice. In the Prior Action to the present litigation, Plaintiff's claims – against Defendant Torrenzano *only* – were dismissed by the Court *without prejudice*. *See* Prior Action, Dkt. # 30.

In *McLean v. United States*, the Fourth Circuit sought to clarify the different operation of the granting of a motion to dismiss *with* prejudice as opposed to the granting of one *without*:

> When the word "dismissed" is coupled with the words "[for] fail[ure] to state a claim upon which relief may be granted," the complete phrase has a well-established legal meaning. Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 [] (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice.").
>
> . . . In contrast, **a dismissal without prejudice for failure to state a claim is *not* an adjudication on the merits**, *Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 [] (1990), and "permits a plaintiff to refile the complaint as though it had never been filed," *Mendez v. Elliot*, 45 F.3d 75, 78 (4th Cir. 1995).

566 F.3d 391, 396-97 (4th Cir. 2009) (alterations added by appellate court) (citations in original) (emphasis added).

As the district court in the Prior Action made clear, Plaintiff's claims were dismissed without prejudice – a determination that explicitly allows for the refiling of said claims – and, as the law, *supra*, elucidates further, a dismissal without prejudice is *not* an adjudication upon the

merits. The dismissal of Plaintiff's claims against Defendant Torrenzano in the Prior Action, therefore, can have no effect upon Plaintiff's claims against Defendant Watts in the Current Action.

      c.   *The denial of Plaintiff's Motion to Amend in the Prior Action, made not on the grounds of futility but of prejudice, and prejudice only as to Defendant Torrenzano, is a decision on the merits only with regards to Defendant Torrenzano and has no effect upon the Current Action against Defendant Watts.*

Defendant Watts similarly asserts that the merits of Plaintiff's claims under the CFAA and VCCA were actually determined in the Prior Action. *See* Dkt. # 7, p. 8 (writing that "this Court denied [Plaintiff's Motion to Amend], holding that amending to include a CFAA claim would be futile . . ."); Dkt. # 7, p. 12 (writing that "this Court denied [Plaintiff's Motion to Amend], holding that amending to include a VCCA claim would be futile . . ."). This, however, is patently untrue; while the Magistrate's Report & Recommendation relied upon the grounds of futility, among others, *see* Prior Action, Dkt. # 58, the Honorable Judge Lee ultimately relied only upon the finding of prejudice, and only as to Defendant Torrenzano, *see* Prior Action, Dkt. # 86.

Defendant Watts attempts to use his untrue assertions that the merits of Plaintiff's claims under the CFAA and VCCA were actually determined in the Prior Action as the basis for his reliance upon the doctrine of collateral estoppel. As discussed *supra*, collateral estoppel has five requirements that must be met before its application becomes appropriate:

> In order to apply the doctrine, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.

*Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 653 (4th Cir. 2005) (citing *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

Defendant Watts endeavors to employ the findings of the magistrate's recommendation as to futility, rather than the ultimate ruling based upon prejudice to Defendant Torrenzano, to satisfy requirement two for the application of collateral estoppel: that "the issue was actually determined in the prior proceeding." *Id.* Because the futility of Plaintiff's amended Complaint was left undetermined by the district court in the Prior Action, as shown *supra*, Watts has failed to show the presence of requirement two for the application of collateral estoppel and may not press this Court to adopt the reasoning of the magistrate in the Prior Action.

Defendant Watts also attempts to prove the presence of requirement three for the application of collateral estoppel: "the determination of the issue was a critical and necessary part of the decision in the prior proceeding." *Id.*; *see* Dkt. # 7, p. 8 ("The issue of whether Plaintiff alleges compensable losses under the CFAA that meet or exceed the $ 5,000 statutory threshold . . . was one of the express reasons that this Court denied Plaintiff the opportunity to re-assert the claim in the Prior Action" (citing Prior Action, Dkt. # 30, 58)); *id.* at p. 12 ("The issue of whether Plaintiff alleges an actual, causally-connected injury to his person or property by reason of a violation of the VCCA . . . was one of the express reasons that this Court denied Plaintiff the opportunity to re-assert the claim in the Prior Action." (citing Prior Action, Dkt. # 30, 58)).

However, as has been fully expounded upon, Defendant Watts ignores the operative filing, *see* Prior Action, Dkt. # 86, the Order of the district court adopting the magistrate's Report & Recommendation as to the finding of prejudice *only*, and moreover, as to the finding of prejudice *only to Defendant Torrenzano*. The district court expressly reserved judgment on the issue of futility and whether or not Plaintiff could allege compensable losses under the CFAA or a causally-connected injury to his person or property under the VCCA. *Id.* Watts, tellingly, chooses instead to cite to the district court's Order granting the Motion to Dismiss in part, *see* Prior Action, Dkt. #

30, and the magistrate's Report & Recommendation on the Motion to Amend, *see* Prior Action, Dkt. # 58.

Because Plaintiff's ability to allege losses or injury was unequivocally left undetermined by the district court in the Prior Action, Watts has failed to show the presence of requirement three for the application of collateral estoppel – that the determination of the issue was a critical and necessary part of deciding to deny the Motion to Amend – and may not press this Court to adopt the reasoning of the magistrate in the Prior Action.

Defendant Watts similarly strives to satisfy requirement four for the application of collateral estoppel: "the prior judgment was final and valid." *Martin*, 407 F.3d at 653; *see* Dkt. # 7, pp. 8-9 (writing that "this Court's later denial of Plaintiff's motion to amend his Complaint to re-assert his CFAA claim against both Torrenzano and Watts on futility grounds constitutes 'a final judgment on the merits barring the same complaint in [this action].'" (alterations added by Defendant) (quoting *Professional Mgmt. Assocs. v. KPMG*, 345 F.3d 1030, 1032 (8th Cir. 2003); citing *see also Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 397-98 (4th Cir. 2006))); *id.* at p. 13 (writing that "this Court's later denial of Plaintiff's motion to amend his Complaint to re-assert his VCCA claims against both Torrenzano and Watts on futility grounds constitutes 'a final judgment on the merits barring the same complaint in [this action].'" *Id.*).

The authorities cited by Defendant Watts are inapposite to the Current Action, and the facts relied upon are, again, false. As a non-party to the Prior Action, the doctrine of *res judicata* is unavailable to Defendant Watts.

Defendant Watts has failed to show the existence of the five factors that must be found prior to the application of collateral estoppel, and thus the doctrine is unavailable to him. The

denial of Plaintiff's Motion to Amend in the Prior Action, then, can have no effect upon Plaintiff's claims against Defendant Watts in the Current Action.

> d. *Defendant Watts was not in privity with Defendant Torrenzano in the Prior Action such that the dismissal of Plaintiff's claims and subsequent denial of Plaintiff's Motion to Amend in the Prior Action could bar the Current Action.*

In rare cases, the doctrine of *res judicata* may be asserted by a non-party to the previous litigation, so long as the non-party shared privity with one of the named parties. *See supra*. Proving the presence of privity, however, is a burdensome task:

> To be in privity with a party to a former litigation, the non-party must be "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997) (citing *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 493 (4th Cir. 1981)). However, an exact definition of privity is an elusive concept. *See Nash*, 640 F.2d at 493-94. As this court stated in *Nash*, privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Id.* at 494 (internal quotation marks omitted).

> There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action. *See generally* 18A Wright, Miller & Copper, *Federal Practice and Procedure: Jurisdiction 2d* § 4488 (2d ed. 2002). The third category, that of adequate representation, also known as "virtual representation," is that which is contested here. *See American Forest Resource Council v. Shea*, 172 F. Supp. 2d 24, 31 (D.D.C. 2001) ("the doctrine of virtual representation, which falls under the 'adequately represented' category").

In this Circuit, virtual representation has been defined narrowly. In *Klugh*, we stated:

> Because the doctrine of virtual representation applies principles of res judicata to nonparties to a judgment, the doctrine must cautiously be applied in order to avoid infringing on principles of due process. . . . *The doctrine of virtual representation does not authorize application of a bar to relitigation of a claim by a nonparty to the original judgment where the interests of the parties to the different actions are separate or where the parties to the first suit are not accountable to the nonparties who file a subsequent suit. In*

> addition, a party acting as a virtual representative for a nonparty
> must do so with at least the tacit approval of the court.

> 818 F.2d at 300 (citations omitted) (emphasis added) Defining the "tacit approval"
> requirement, we cited to the Restatement (Second) of Judgments, which states "The
> essential question is whether there is a disclosed relationship in which the party is
> accorded authority to appear as a party on behalf of others." *Id.* (citing Restatement
> (Second) of Judgments § 36(1), cmt. b (1982)).

*Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 651-52 (4th Cir. 2005) (citations in

original) (footnotes omitted).

Defendant Watts has not pointed to any of the above factors or any other facts that might

show privity between himself and Defendant Torrenzano in the Prior Action. Watts is thus barred

from asserting the doctrine of *res judicata* in the current action.

## II.   PLAINTIFF'S COMPLAINT PROPERLY ALLEGES FACTS SUFFICIENT TO MAINTAIN THE CURRENT ACTION.

### A.   *Plaintiff's Complaint properly alleges compensable losses capable of amounting to the $ 5,000 statutory threshold required under the CFAA.*

Plaintiff's Complaint properly alleges sufficient facts to support a finding of $ 5,000 or

more in compensable losses. *See* Dkt. # 1, ¶¶ 73-122. "The CFAA defines 'loss' as 'any reasonable

cost to any victim,' *including the cost of responding to an offense*, conducting a damage

assessment, and restoring . . . the system . . . to its condition prior to the offense, and any revenue

lost, cost incurred, or other consequential damages incurred because of interruption of service.'"

*A.V. v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) (quoting 18 U.S.C. § 1030(e)(11))

(emphasis added by appellate court).

The time taken by Plaintiff in responding Defendant Watts' violation of the CFAA, and his

subsequent conducting of a damage and security assessment, is a "loss," as that term is

contemplated within the statutory framework of the CFAA. *See, e.g.*, *iParadigms*, 562 F.3d 630,

645-46 (holding that the CFAA contemplates "loss" to include "costs incurred as part of the

response to a CFAA violation, including an investigation of an offense.”); *United States v. Nosal*, 844 F.3d 1024, 1047 (9th Cir. 2016) (applauding the district court's inclusion of “internal investigation costs to uncover the extent of the breach” in its calculation of damages under the CFAA (citing *United States v. De La Fuente*, 353 F.3d 766, 773 (9th Cir. 2003))); *United States v. Hosking*, 567 F.3d 329, 332 (7th Cir. 2009)). Plaintiff has clearly established a “loss” under the CFAA analysis.

In *Brown Jordan Int'l v. Carmicle*, the district court analyzed the meaning of “loss” within the statutory framework of the CFAA thusly:

> [T]he statutory definition includes two separate types of loss: (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program, system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service. *See* 18 U.S.C. § 1030(e)(11).
>
> In the instant case, the Company's loss is of the first type. The amount paid to Crowe Horwath in connection with its investigation into how Carmicle accessed other employees' email accounts and its forensic examination of the Company-owned laptop is a reasonable cost incurred in connection with such activities as responding to a CFAA violation, assessing the damage done, and restoring the affected data, program, system, or information to its condition prior to the violation. *See A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009); *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1345 (M.D. Fla. 2014). Likewise, the $ 14,331.47 paid to Kroll in connection with scanning for any audio or video surveillance devices not installed by the Company is a reasonable cost incurred in connection with such activities as responding to a CFAA violation and assessing the damage done. Those costs were incurred by the Company during a one-year period and aggregate more than $ 5,000.00 in value. Accordingly, the Company may maintain a civil action against Carmicle under the CFAA to obtain compensatory damages and injunctive relief or other equitable relief.

2016 U.S. Dist. LEXIS 25879, *133-34 (S.D. Fla. 2016) (citations in original). Plaintiff's losses are akin to those alleged by the plaintiff in *Carmicle*. However, in the present case, rather than pay a third party to perform the investigation into the unauthorized access, etc., Plaintiff undertook

those actions himself. Despite the lack of out-of-pocket costs for much of the investigation, Plaintiff's time is a compensable "loss" under the CFAA.

In the Current Action, Plaintiff is an IT professional in possession of a distinct expertise of the sort that could be employed to investigate violations of the CFAA. Hence, rather than pay a third party to perform the investigative work necessary to respond to Defendant Watts' unlawful and unauthorized conduct, Plaintiff simply performed those tasks himself. This is compensable as a "loss" under the CFAA.

*Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004), is an illustrative example of those costs that are *not* compensable as losses under the CFAA. There, the plaintiff sought compensation for a business trip that was taken in response to a CFAA violation. *Id.* In denying the business trip as a basis for compensable losses, the district court wrote:

> [N]othing in the two affidavits [submitted by the plaintiff] indicates that during these meetings [among executives] computers were being investigated or repaired. In fact, one of the meetings took place at an expensive restaurant and another was strictly between [the executives], which eliminates the possibility that they were working with a computer technician or consultant. It is clear that these meetings were held to discuss the problem of the information [taken through the CFAA violation] getting into the hands of competitors. However, nothing suggests that the trips were taken to engage in any type of computer investigation or repair. Furthermore, no facts are alleged showing that preventive measures were added to the computers or that the system was augmented to tighten security – after all, these were discussions between senior executives – not computer experts. [One executive] states that the meeting was held at [corporate] offices because of his belief in having meetings conducted in person. He does not suggest that the meetings were held at [the corporate office] so that he and [another executive] could inspect or repair the computers.

*Id.* at 476 (alterations added). In explaining why these losses are non-compensable, the *Nexans* court pointed to facts that might serve to make them otherwise, such as the investigation of computers, working with computer technicians and consultants, interactions done in pursuit of a computer investigation, and the addition of preventive measures to tighten security. *Id.*

In the current action, Plaintiff undertook just these sorts of actions. Plaintiff interacted with computer experts to determine what had occurred. *See, e.g.*, Dkt. # 1, ¶¶ 94-96. Plaintiff attempted to increase the security measures. *See, e.g.*, *id.* at ¶¶ 106-109, 113-115. Plaintiff investigated the source and extent of the violation and trespass. *See, e.g.*, *id.* at ¶¶ 97-98. These are indeed compensable losses under the CFAA.

In *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, a decision out of the Northern District of Illinois, the court explained why even a computer expert's time might, under certain circumstances, be non-compensable under the CFAA:

> It appears Del Monte hired [the computer expert] for assistance in its lawsuit [], not to conduct a damage assessment. While this is certainly a legitimate business concern, it does not transform the harms suffered by Del Monte into "losses" under the CFAA.

616 F. Supp. 2d 805, 812 (N.D. Ill. 2009) (alterations added). The above-mentioned actions undertaken by Plaintiff were not in pursuit of litigation, but in an attempt to uncover who had accessed his accounts, which accounts they had accessed, and what they had done therein. Plaintiff's Complaint therefore properly alleges compensable losses under the CFAA.

### B. Plaintiff's Complaint properly alleges injury to person or property required under the VCCA.

Plaintiff's Complaint contains facts sufficient to show injury for purposes of the VCCA. "The elements of a violation of the VCCA are that the defendant (1) uses a computer or computer network; (2) without authority; and (3) either obtains property or services by false pretenses, embezzles or commits larceny; or converts the property of another. *State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 319 (E.D. Va. 2009) (citing Va. Code § 18.2-152.3). The Virginia Code provides:

> Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass [] regardless of whether

such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, "damages" shall include loss of profits.

Va. Code Ann. § 18.2-152.12 (2017).

Consequential damages are clearly contemplated by the CFAA, and the same analysis is used when identifying damages under the VCCA. *See, e.g.*, *A.V. v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009). In *iParadigms*, the Court of Appeals for this Circuit overruled a district court's decision to narrowly construe "damages" under the CFAA and VCCA:

> [The plaintiff] suggests that there is no indication in the statute that the Virginia General Assembly intended to so limit the meaning of "any damages." Finding nothing in the statute to suggest that consequential damages are not available under 18.2-152.12, we agree that it was error to dismiss the VCCA claim solely on this basis . . . We conclude that the evidence of consequential damages presented by [the plaintiff] came within the "any damages" language of the VCCA, and therefore that the district court erroneously granted summary judgment because there was no evidence of "actual or economic damages."

*Id.* at 647 (alterations added). Given the above reasoning, it is clear that Plaintiff has shown "damages" as they are understood within the context of the VCCA, and his claims thereunder should not be dismissed at this stage.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court find that the Prior Action does not affect the Current Action in any wait that Defendant alleges and that Plaintiff has properly pled his claims under CFAA and VCAA. In so doing, Plaintiff asks that this Court then deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted

/s/ Eric J. Menhart*
Eric J. Menhart, Esq.
Lexero Law
316 F Street NE, Suite 101
Washington, D.C. 20002
Tel.: 855.453.9376 Ext. 101
Fax: 855.453.9376
Eric.Menhart@Lexero.com

***Attorney for Plaintiff***

* *Admitted Pro Hac Vice*

/s/ William Peter Robinson, III
William Peter Robinson, Esq.
Robinson Law Services
319 North Piedmont Street, Suite 1
Arlington, VA 22203
Tel.: 703.789.4800
William@RobinsonsLaw.com

***Attorney for Plaintiff***