IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| PATRICK HATELY, | |
|     Plaintiff, | CIVIL ACTION NO. 1:17-cv-00502 (AJT/JFA) |
|     v. | |
| DAVID WATTS, M.D., | |
|     Defendant. | |

**REPLY BRIEF IN SUPPORT OF**
**<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

**INTRODUCTION**

Plaintiff's[1] opposition to the instant motion is an ineffectual attempt to distract the Court from the fundamental truth that demands the dismissal of most of his Complaint: Plaintiff has failed to plausibly plead damages of the type and amount necessary to support his claims. He has failed to plausibly plead such damages because they do not exist. Accordingly, Counts I and III through V of the Complaint should be dismissed, with prejudice.

**ARGUMENT**

I. **COUNT I OF THE COMPLAINT, PURPORTING TO ALLEGE A CLAIM UNDER THE CFAA, SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE COMPENSABLE LOSSES THAT MEET OR EXCEED THE $5,000 STATUTORY THRESHOLD FOR SUCH CLAIMS.**

To state a claim under the CFAA, Plaintiff must plausibly allege that he suffered a statutorily compensable "loss" totaling $5,000 in any one-year period. *See* 18 U.S.C. § 1030(g). Plaintiff has not met this threshold burden.

---

[1] All capitalized terms not otherwise defined herein have the meanings attributed to them in the Brief in Support of Motion to Dismiss for Failure to State a Claim (Doc. No. 7).

1

A "loss" under the CFAA is "any *reasonable* cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring . . . the system . . . to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Hately v. Torrenzano*, No. 1116CV01143GBLMSN, 2017 WL 2274326, at *8 (E.D. Va. May 23, 2017) (emphasis added). Courts have consistently determined that a "loss" "is limited to the remedial costs of investigating the computer for damage and remedying the damage or any costs incurred, including lost revenue due to an interruption of service, because the computer cannot function while or until repairs are made." *See Turner W. Branch, P.A. v. Osborn*, No. CV 13-00110 MV/WPL, 2014 WL 12593991, at *17 (D.N.M. Mar. 26, 2014) (citing cases). Indeed, "there is nothing to suggest that the 'loss' or costs alleged can be unrelated to the computer." *Wilson v. Moreau*, 440 F. Supp. 2d 81, 109-10 (D.R.I. 2006), *aff'd*, 492 F.3d 50 (1st Cir. 2007).

Here, Plaintiff alleges that he suffered "losses" in the following categories:

1. Plaintiff's time spent researching statutes and case law, traveling to and consulting with prospective attorneys, and the attorneys' fees, gasoline, and mileage costs incurred for consulting with prospective attorneys;[2]

2. Plaintiff's time spent reporting the incident to, and communicating with, law enforcement officials;[3] and

3. Plaintiff's time spent reviewing telephone, online account, and e-mail records, restoring deleted messages, changing passwords, contacting various vendors

---

[2] *See* Compl. ¶¶ 91-92, 99-105,119-21.
[3] S*ee* Compl. ¶¶ 106-12.

about allegedly unauthorized access, and researching and implementing security enhancements.[4]

Only the third category of "loss" alleged by Plaintiff is even arguably compensable under the CFAA. When the first two categories are properly omitted, it is clear that Plaintiff's losses fall far below the minimum statutory threshold of $5,000.

### A. FIRST CATEGORY – EVALUATING THE ALLEGEDLY WRONGFUL CONDUCT AND PREPARING FOR LITIGATION

Plaintiff's time spent researching statutes and case law, traveling to and consulting with prospective attorneys, and the attorneys' fees, gasoline, and mileage costs incurred for consulting with prospective attorneys do not constitute a compensable "loss" under the CFAA.[5] *See, e.g.*, *Sun W. Mortg. Co., Inc. v. Matos Flores*, No. CV 15-1082 (GAG), 2016 WL 1030074, at *4 (D.P.R. Mar. 10, 2016) (dismissing CFAA claim and observing, "Courts have held that legal fees do not constitute a loss under the CFAA. Similarly, management's time spent evaluating whether Matos' conduct is actionable is not recoverable under the CFAA.") (internal citations omitted); *see also Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D.R.I. 2006), *aff'd*, 492 F.3d 50 (1st Cir. 2007) ("[A]s a matter of law, the costs of litigation cannot be counted towards the $5,000 statutory threshold."). Plaintiff's alleged "losses" in this category total $11,816.39[6] of the

---

[4] *See* Compl. ¶¶ 93-98; 113-15
[5] Although Plaintiff argues that "[t]he above-mentioned actions undertaken by Plaintiff were not in pursuit of litigation," Pl.'s Br. 20, this position is belied by the express language of Plaintiff's Complaint, which states that "Plaintiff began researching potential attorneys *to assist him in the present litigation*." Compl. ¶ 99 (emphasis added).
[6] *See* Compl. ¶¶ 91 ($6,380 claimed for researching applicable law), 92 ($957 claimed for researching similar cases), 99 ($478.50 claimed for researching "potential attorneys to assist him in the present litigation"), 100 ($957 claimed for communicating with one of those potential attorneys), 101 ($1,276 claimed for driving to meet with one of those potential attorneys), 102 ($478.50 claimed for researching another potential attorney), 103 ($319 claimed for researching another potential attorney and speaking to that attorney by telephone), 104 ($319 claimed for researching Plaintiff's current counsel ), 105 ($319 claimed for Plaintiff's time during his initial

$18,036.89 in total "losses" alleged;[7] disregarding them reduces Plaintiff's claimed "losses" to $6,220.50.  When these remaining alleged "losses" are adjusted for the Complaint's misrepresentation of Plaintiff's "hourly rate,"[8] this amount is further reduced to *$1,950*, far below the $5,000 threshold.  Accordingly, the Court need go no further to justify the dismissal of Count I of the Complaint, with prejudice.

### B.   SECOND CATEGORY – REPORTING THE ALLEGED INCIDENT TO LAW ENFORCEMENT

Similarly, Plaintiff's second category of alleged "loss"—time spent reporting the incident to, and communicating with, law enforcement officials—is not compensable under the CFAA. Plaintiff cites his communications with the Frederick County Sheriff's Office and suggests that he "attempted to increase . . . security measures" by filing a report with the Sheriff.  Pl.'s Br. 20 (referencing Compl. ¶¶ 106-09).  Moreover, while not addressed expressly in his brief, Plaintiff also alleges a loss for the time that he spent researching prosecutors and meeting with the Commonwealth's Attorney.  *See* Compl. ¶¶ 110-12.

Just as the "time spent evaluating whether [a civil defendant's] conduct is actionable is not recoverable under the CFAA," *Matos Flores*, 2016 WL 1030074, at *4, time spent evaluating whether a putative criminal defendant's conduct is punishable criminally should not qualify as a compensable "loss" under the CFAA.  Moreover, there are no factual allegations that either the Frederick County Sheriff's Office or the Commonwealth's Attorney investigated Plaintiff's computer for damage or performed any acts that were reasonably necessary to re-secure the

---

consultation with his current counsel), 119 ($250 in attorney's claimed for Plaintiff's consultation with a potential attorney), 120 ($67.39 in mileage claimed for Plaintiff's drive to meet with a potential attorney), 121 ($15 claimed for gas purchased by Plaintiff due to meeting with that attorney and for which Plaintiff also claims the IRS mileage rate).
[7] *See* Compl. ¶¶ 117-121.
[8] *See* Argument, Section I.C., below.

system.  Instead, Plaintiff alleges that he "made an appointment to file a report with [the Sheriff] and bring [the Sheriff] the evidence *Plaintiff* had collected," Compl. ¶ 107 (emphasis added), and Plaintiff further acknowledges that he—not a law enforcement official—was the one who reset his Gmail password after the unauthorized access, added a second form of authentication, and scanned his mobile telephone for viruses.  *See* Compl. ¶¶ 113-15.  Plaintiff's interactions with the Frederick County Sheriff's Office and the Commonwealth's Attorney were not related to identifying and remedying damage to Plaintiff's computer, but rather were for the purpose of instituting law enforcement and criminal proceedings against Watts.  For those same reasons, Plaintiff has no credible argument that his interactions with the Frederick County Sheriff's Office and the Commonwealth's Attorney were necessary to identify the perpetrator to remedy the harm to Plaintiff's computer.  As an initial matter, "[o]nly in limited circumstances have courts considered the cost of discovering the identity of the offender to be part of the 'loss' under the statute. . . . In other words, investigating the perpetrator's identity was only justified to the extent that it was necessary to remedy the harm."  *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012).

Here, it was only upon Torrenzano alleging in a deposition that "Watts gained access to Plaintiff's email account because she provided Defendant Watts with Plaintiff's password," Compl. ¶ 63, that "shortly after discovering the above information, Plaintiff reported the breaches to the Frederick County Sheriff's Office." Compl. ¶ 65.  Accepting the allegations set forth in the Complaint as true, Plaintiff's contact with the Frederick County Sheriff's Office and the Commonwealth's Attorney was for the purpose of confirming the identity of the alleged offender, which was already known, and was not a necessary condition to remedying the alleged harm.  *See Mintz*, 906 F. Supp. 2d, at 1030-31 ("All Plaintiff needed to do to secure his Gmail

account—indeed, all he could do—was to change the password and the back-up email address used to retrieve the password. It defies common sense to believe that Plaintiff's subsequent legal efforts to confirm Priority Sports' involvement were 'essential to remedying the harm' of the unauthorized access.").

Plaintiff's alleged "losses" in this category total $2,552[9] of the $18,036.89 in total "losses" alleged;[10] disregarding them further reduces Plaintiff's claimed "losses" to $3,668.50. Adjusting these remaining "losses" for the Complaint's misrepresentation of Plaintiff's hourly rate further reduces them to a total of $1,150.

Accordingly, even before the third category of alleged "losses" is considered, Plaintiff has failed to meet the $5,000 for compensable losses and Count I of his Complaint must be dismissed. Again, the Court need go no further to justify dismissing Count I of the Complaint.

### C. THIRD CATEGORY – REVIEWING RECORDS, RESTORING EMAILS, AND RESEARCHING AND IMPLEMENTING SECURITY ENHANCEMENTS

Assuming *arguendo*, that Plaintiff's third category of alleged "losses"—time he spent reviewing telephone, online account, and e-mail records, restoring deleted messages, changing passwords, contacting various vendors about allegedly unauthorized access, and researching and implementing security enhancements[11]—are compensable under the CFAA, his losses fall below

---

[9] See Compl ¶¶ 106-112.
[10] *See* n.5, above
[11] Plaintiff's reliance on *United States v. Nosal* for the proposition that the Ninth Circuit Court of Appeals "applaud[ed] the district court's inclusion of 'internal investigation costs to uncover the extent of the breach' in it its calculation of damages under the CFAA," Pl.'s Br. 18, is entirely misplaced. First, *Nosal* arose, in part, from the appeal of a *criminal conviction* under the CFAA. Second, the portion of the opinion quoted by Plaintiff dealt with a review of the district court's award of restitution under the Mandatory Victim Restitution Act ("MVRA")—not the CFAA. *See, e.g.*, 844 F.3d 1024, 1046 (9th Cir. 2016) (prefacing the court's analysis by noting, "The MVRA requires that restitution awards 'reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.'") (quoting 18

the $5,000 minimum threshold. Even applying Plaintiff's asserted $319 hourly rate, these "losses" total only $3,668.50, not $5,000. *See* Compl. ¶¶ 93-98, 113-15. Again, the Court need go no further to justify dismissing Count I of the Complaint.

However, even this calculation relies on Plaintiff's allegation that his hourly rate is $319. *See* Compl. ¶¶ 86-88. **This allegation is categorically false**. Though the Complaint alleges that "[i]n a recent deposition in another matter, Plaintiff testified that his hourly rate was $319/hour," in fact the portions of the deposition transcript attached to the Complaint as Exhibit 7 reveal that Plaintiff testified that *he has never been paid $319 per hour*. Doc. No. 1, Compl. Ex. 7, at 2:5-9. In fact, *he has never even been paid $250 per hour, or $150 per hour*. Doc. No. 1, Compl. Ex. 7, at 2:10-13. It is unclear as to whether Plaintiff has even ever billed his time at $100 per hour. Doc. 1, Compl. Ex. 7, at 2:14-25. Clearly, Plaintiff's "reasonable" hourly rate cannot possibly be more than $100 per hour.[12]

By falsely representing his hourly rate in the Complaint, in the face of contrary evidence appended thereto, Plaintiff has overstated his allegedly compensable losses by more than three times. Adjusting for this misrepresentation, Plaintiff's total *alleged* "losses" total no more than $5,882.39, while his claimed losses in the third category (the only category even arguably compensable under the CFAA) total *only $1,150*.

The allegations set forth in the Complaint, combined with the exhibits attached thereto, demand that Count I be dismissed, with prejudice. This is not surprising, given the fact that this

---

U.S.C. § 3663A(b)(4)). Accordingly, *Nosal* is inapposite to the issue of compensable "loss" under the CFAA in the civil context.

[12] The absurdity of Plaintiff's claimed $319 hourly rate is further underscored by the fact that as a "non-attorney," he has claimed $7,337 in "losses" associated with doing legal work at $319 per hour. See Doc. No. 1, Compl. ¶¶ 91-92. The hourly rate for the undersigned counsel for Dr. Watts is only $76 more per hour more ($395) than the hourly rate claimed for legal work by Plaintiff ($319), despite the fact that the undersigned counsel *has been practicing law for nearly 20 years* and the Plaintiff has never even been licensed to practice law.

Court dismissed Plaintiff's CFAA claim in the Prior Action on similar grounds. *See* Prior Action, Doc. Nos. 23, 24, 26, 28 & 30.

II. **COUNTS III THROUGH V OF THE COMPLAINT, PURPORTING TO ALLEGE CLAIMS FOR COMPUTER FRAUD, COMPUTER TRESPASS, AND COMPUTER INVASION OF PRIVACY UNDER VIRGINIA LAW, SHOULD BE DISMISSED AS THEY FAIL TO PROPERLY ALLEGE THE REQUIRED INJURY TO PLAINTIFF'S PERSON OR PROPERTY**

Plaintiff also fails to state a claim under the Virginia Computer Crimes Act (the "*VCCA*"). The civil relief provisions of the VCCA provide in relevant part:

> Any person whose property or person is injured by reason of a violation of any provision of this article or by any act of computer trespass set forth in subdivisions A 1 through A 8 of § 18.2-152.4 regardless of whether such act is committed with malicious intent may sue therefor and recover for any damages sustained and the costs of suit. Without limiting the generality of the term, "damages" shall include loss of profits.

Va. Code § 18.2-152.12(A).

Although Plaintiff argues in conclusory fashion that the Complaint "contains facts sufficient to show injury for purposes of the VCCA," Pl.'s Br. 20, Plaintiff does not allege any causally-connected actual damages or any category of consequential damages recognized by Virginia law in support of his VCCA claim. First, Plaintiff fails to allege any actual damages suffered from the mere copying or even deletion of emails with no independent value. Second, Plaintiff fails to allege any consequential injury to Plaintiff's reputation or profits, among others. Plaintiff's VCCA claims should be dismissed accordingly.

Plaintiff relies on *A.V. v. iParadigms*, 562 F.3d 630 (4th Cir. 2009), for the proposition that consequential damages are available under the VCCA. *See* Pl.'s Br. 21. There, the Fourth Circuit held, "[f]inding nothing in the statute to suggest that consequential damages are not available under section 18.2–152.12, we agree that it was error to dismiss the VCCA claim solely on this basis." *Id.* at 647. Here, however, Plaintiff fails to assert any cognizable consequential

8

damages recognized by Virginia law. Plaintiff does not allege a loss of reputation. *Bevins v. Partridge, Jones & Assocs., Ltd.*, 22 Va. Cir. 334, at *1 (Charlottesville 1990) ("[T]he court concludes that damages for loss of professional reputation would fall, at best, in the category of consequential damages."). Plaintiff does not allege lost profits. *See R.K. Chevrolet, Inc. v. Hayden*, 253 Va. 50, 56, 480 S.E.2d 477, 481 (1997) ("The trial court correctly ruled that R.K.'s claimed lost profits are consequential damages . . . ."). Plaintiff does not allege that Watts caused Plaintiff to defend a lawsuit brought by a third party. *See Hiss v. Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 875-76 (1960) (discussing a limited exception to the American Rule where attorneys' fees may be recovered as consequential damages). Plaintiff does not allege a loss of salary or wages. *See Moore v. Assocs. Fin. Servs. of Am., Inc.*, 37 Va. Cir. 256, at *2 (Richmond 1995) (denying an award of consequential damages on foreseeability grounds).

Ultimately, the only pecuniary losses that Plaintiff alleges in the Complaint are litigation expenses. *See, e.g.*, Compl. ¶¶ 119-21 (describing travel expenses associated with finding an attorney and an attorney consultation fee). Even so, the "American Rule" followed in Virginia precludes Plaintiff from recasting his litigation expenses as consequential damages under the VCCA. In so doing, the American Rule prevents "the specter of burdensome expenses being imposed on an unsuccessful party." *Tonti v. Akbari*, 262 Va. 681, 685, 553 S.E.2d 769, 771 (2001). *But see* Va. Code § 18.2-152.12(A) (allowing the recovery of the "costs of suit" *in addition to* "any damages sustained" by a prevailing VCCA plaintiff—not as consequential damages). Because the Complaint does not plausibly allege any consequential damages recognized under Virginia law, Plaintiff's VCCA claims should be dismissed with prejudice.

9

### III. COLLATERAL ESTOPPEL, OR ISSUE PRECLUSION, FORECLOSES COUNT I AND COUNTS III THROUGH V OF THE COMPLAINT.

Issue preclusion estops Plaintiff from relitigating which categories of damages are compensable under the CFAA for the purposes of the statutory threshold and, moreover, whether the information purportedly viewed, copied, and/or deleted by Watts and/or Torrenzano caused Plaintiff an injury to person or property in violation of the VCCA. In the Prior Action, as to Torrenzano:

> The Court dismissed the CFAA claim because Plaintiff failed to sufficiently allege that he incurred over $5,000 in losses or damages compensable under the CFAA, which pursuant to 18 U.S.C. § 1030(g) is the statutory threshold for bringing a CFAA action. Although defendant moved to dismiss the Virginia Computer Crime Claims on multiple grounds, the Court dismissed the Virginia Computer Crime Claims because Plaintiff failed to sufficiently allege how he sustained any injury to person or property by reason of a violation of the Virginia Computer Crimes Act ("VCCA").

*Hately v. Torrenzano*, No. 1116CV01143GBLMSN, 2017 WL 2274326, at *3 (E.D. Va. May 23, 2017).

The dismissal of Plaintiff's CFAA and VCCA claims against Torrenzano "without prejudice" does not render the doctrine of collateral estoppel inapplicable to this case[13] and issues that were firmly decided in the Prior Action. *See Cooper v. Principi*, 71 F. App'x 73, 75 (1st Cir. 2003) ("Moreover, although the dismissal of the first suit was labeled 'without

---

[13] The federal common law of collateral estoppel applied in federal question cases that include supplemental state law claims does not require the mutuality of parties. *See Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971); *see also Robinson v. City of Phoenix*, No. CV10-1044 PHX DGC, 2010 WL 4054167, at *2 (D. Ariz. Oct. 15, 2010) ("Even though *Robinson I* contained some state law claims, the federal rule for *res judicata* controls because *Robinson I* and *Robinson II* are not diversity cases; they are federal question cases with supplemental jurisdiction of some state law claims."). *But see also Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007) (applying Virginia law pursuant to *diversity jurisdiction* and noting that "in Virginia, collateral estoppel requires a fourth element, mutuality.").

prejudice,' it is 'with prejudice' with respect to the issues that were decided in the first suit."). *See also Irvin v. United States*, 335 F. App'x 821, 825 (11th Cir. 2009) ("Finally, the fact that the district court's dismissal of the 2003 Complaint was without prejudice is irrelevant for purposes of collateral estoppel. . . . The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.") (internal citations and quotations omitted); *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) ("[T]he finality requirement for issue preclusion has become less rigorous. Recent decisions have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced. Finality in the context of issue preclusion may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.") (internal alterations, quotations, and citations omitted).

In the Prior Action, this Court decided that "Plaintiff failed to sufficiently allege that he incurred over $5,000 in losses or damages compensable under the CFAA." *Hately*, 2017 WL 2274326, at *3. Here, although Plaintiff alleges in greater detail his purported "losses" under the CFAA, Plaintiff's new allegations are immaterial because Plaintiff has still pleaded categories of damages that are non-compensable for the purposes of the $5,000 statutory threshold. *Compare, e.g.*, Prior Action Doc. No. 21, at ¶ 80 ("Plaintiff incurred other identifiable costs, personally and via his attorneys, such as court filing fees. . . . All such costs were reasonably necessary in 'responding to' the CFAA offense.") *with* Compl. ¶ 140 ("Plaintiff incurred other identifiable

costs, personally and via his attorneys, such as court filing fees. . . . All such costs were reasonably necessary in 'responding to' the CFAA offense."). Accordingly, Plaintiff has merely pleaded more specificity about an issue of "loss" that was decided against him in the Prior Action and that is sufficiently firm to be accorded preclusive effect as to Watts in this case.

Similarly, Plaintiff alleges the same purported injuries under the VCCA that he did in the Prior Action, where "the Court dismissed the Virginia Computer Crime Claims because Plaintiff failed to sufficiently allege how he sustained any injury to person or property . . . ." *Hately*, 2017 WL 2274326, at *3. In the Prior Action, Plaintiff alleged, among related accusations, that "Torrenzano read emails between Plaintiff and his family, and may have made copies of emails . . . [and] also deleted the notification emails sent by Plaintiff's email account whenever a new device connects to his account." Prior Action Doc. No. 21, at ¶¶ 41-42. Here, Plaintiff once again asserts, for instance, "[u]pon information and belief, on or about October 13, 2015, Defendant Watts had made an unauthorized access to Plaintiff's email accounts, read and otherwise accessed each and every email in the account, and he may have made copies of said emails." Compl. ¶ 59. Thus, Plaintiff complains of the same supposed harm in both cases. This issue—injury to person or property under the VCCA— was decided against Plaintiff in the Prior Action, and the Complaint does not contain sufficiently different, substantive allegations that warrant relitigating the matter. This Court should dismiss Plaintiff's VCCA claims with prejudice as a result.

## CONCLUSION

WHEREFORE, in consideration of the foregoing and the arguments set forth in the accompanying brief, Defendant David Watts, M.D. respectfully moves this Court to dismiss

Counts I, III, IV, and V of the Complaint, with prejudice, and grant him such other and further relief as the Court deems just and appropriate.

                                        Respectfully Submitted,

                                        DAVID WATTS, M.D.
                                        By counsel

        /s/
Jonathan D. Frieden, Esquire (VSB No. 41452)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
(703) 218-2125
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 26, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF), to the following:

                William Peter Robinson, III, Esquire
                ROBINSON LAW SERVICES
                319 N. Piedmont Street, Suite 1
                Arlington, VA 22203
                William@RobinsonLaw.com

                Eric J. Menhart, Esquire
                LEXERO LAW FIRM
                316 F Street NE, Suite 101
                Washington, D.C. 20002
                Eric.Menhart@Lexero.com
                *Counsel for Plaintiff*

                            /s/
                Jonathan D. Frieden, Esquire (VSB No. 41452)
                ODIN, FELDMAN & PITTLEMAN, P.C.
                1775 Wiehle Avenue, Suite 400
                Reston, Virginia 20190

> (703) 218-2125
> (703) 218-2160 (facsimile)
> jonathan.frieden@ofplaw.com
> *Counsel for Defendant*

#3556254v1

14