IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| PATRICK HATELY,<br><br>Plaintiff,<br><br>v.<br><br>DAVID WATTS, M.D.,<br><br>Defendant. | CIVIL ACTION NO. 1:17-cv-00502 (AJT/JFA) |

**BRIEF IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS REPORT AND TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS**

Defendant David Watts, M.D. ("***Watts***") states as follows in support of his Motion to Strike Plaintiff's Expert Witness Report and to Exclude the Testimony of Plaintiff's Expert Witness:

**INTRODUCTION**

Plaintiff Patrick Hately ("***Plaintiff***" or "***Hately***") filed his Complaint against Watts purporting to set forth claims for violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count I); violation of the federal Stored Communications Act (the "***SCA***"), 18 U.S.C. § 2701, *et seq.* (Count II); computer fraud, in violation of Virginia Code Section 18.2-152.3 (Count III); computer trespass, in violation of Virginia Code Section 18.2-152.4(A) (Count IV); and computer invasion of privacy, in violation of Virginia Code Section 18.2-152.5 (Count V). The latter three claims were brought under the Virginia Computer Crimes Act.

Watts filed a motion to dismiss Counts I, III, IV, and V of the Complaint, which this Court granted. Accordingly, the only claim remaining in this action is Plaintiff's claim under Count II of the Complaint, alleging a violation of the SCA.

Pursuant to this Court's Rule 16(B) Scheduling Order and the parties' Joint Discovery Plan, Plaintiff was required to make his disclosures required by Federal Rule of Civil Procedure 26(a)(2) no later than October 27, 2017. In disclosing Keenan Keeling ("***Mr. Keeling***") as his only expert witness in this action, Plaintiff served an initial copy of Mr. Keeling's report on October 27, 2017, and served an amended copy of the report (as amended, the "***Expert Report***," attached hereto (excluding its exhibits) as **Exhibit A**) on November 7, 2016. For the reasons that follow, this Court should strike the Expert Report and exclude Mr. Keeling's testimony.

**ARGUMENT**

The Federal Rules of Evidence permit expert testimony if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. In such cases, an expert who is qualified "by knowledge, skill, experience, training, or education" may testify if (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* When evaluating expert testimony, this Court has a special gatekeeping obligation to ensure that the criteria set forth in Rule 702 have been met. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Federal Rules of Civil Procedure require a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2). Such disclosure "must be accompanied by a written report—*prepared and signed by the witness*—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *Id.* at 26(a)(2)(B) (emphasis added). The written

report must contain, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." *Id.* at 26(a)(2)(B)(i)-(ii). In performing its gatekeeping function of ensuring that expert testimony rests on a reliable foundation, a district court may consider one or more *Daubert* factors, "such as a theory's testability, whether it has been a subject of peer review or publication, the known or potential rate of error, and the degree of acceptance within the relevant scientific community." *Kumho Tire*, 526 U.S. at 145 (internal quotations and alterations omitted).

Contrary to the requirements of the Federal Rules, the Expert Report was not prepared sufficiently by Mr. Keeling, but was instead drafted nearly entirely by Plaintiff's counsel, with Mr. Keeling serving in a largely editorial role. Moreover, the Expert Report consists of: (1) improper and unsupported opinions presented as conclusions of law; (2) numerous statements cut-and-pasted from the online encyclopedia Wikipedia; and (3) certain opinions about website content that are not based on Mr. Keeling's specialized knowledge, skill, or education and, moreover, are merely cumulative of Hately's anticipated lay testimony.

## I. THE EXPERT REPORT SHOULD BE STRICKEN IN ITS ENTIRETY, AND MR. KEELING PRECLUDED FROM TESTIFYING AS AN EXPERT WITNESS IN THIS MATTER, BECAUSE THE EXPERT REPORT WAS DRAFTED NEARLY ENTIRELY BY PLAINTIFF'S COUNSEL AND NOT PREPARED SUFFICIENTLY BY MR. KEELING.

A written expert report produced and provided in accordance with Rule 26(a)(2) must be prepared by the expert witness, not by counsel. *See* Fed. R. Civ. P. 26(a)(2); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291 (E.D. Va. 2001) ("Unquestionably, Rule 26 requires an expert witness to prepare his own Rule 26 Report."). An expert's violation of the duty to prepare his or her own report may warrant exclusion of the expert under Rule 37(c). *See In re Jackson Nat. Life Ins. Co. Premium Litig.*, No. 96-MD-1122, 2000 WL 33654070, at *1-2 (W.D. Mich.

Feb. 8, 2000) (concluding that counsel exceeded the bounds of legitimate assistance in preparing an expert report and precluding the proffered expert testimony as a result).

The Rule 26 requirement that an expert report be prepared by the witness, rather than by counsel, "implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Trigon*, 204 F.R.D. at 293 (quoting *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715 (N.D. Ill. May 18, 1999)). Although "some attorney involvement in the preparation of an expert report is permissible," Rule 26 requires an expert to "*substantially participate* in the preparation of his report." *Id.* (quoting *Manning*, 1999 WL 342715) (emphasis added). Permissible attorney involvement may include, for instance, the "preparation of documents required by Rule 26, *such as a list of cases in which the expert has testified*, or *fine-tuning a disclosure with the expert's input* to ensure that it complies with the rules . . . ." *Id.* (emphasis added). However, "[p]reparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a)(2)(B)'s requirement that the expert 'prepare' the report." *Id.* In addition to conflicting with Rule 26, "if opinions expressed in an expert report are not the opinions of the expert, the expert will not be able to satisfy the requirements of Fed. R. Ev[id.] 702 and *Daubert* that the report be based on the expert's own valid reasoning and methodology." *Id.* at 294.

Mr. Keeling's deposition revealed that Hately's counsel went beyond merely fine-tuning the Expert Report.[1] At his deposition, Mr. Keeling admitted that Hately's counsel created the first draft of the Expert Report. Ex. B, at 53:17-54:6 ("A When you say, 'draft' -- I guess I'm trying to figure out what you mean by 'draft.' Q Okay. So, someone needed to put pen to paper with respect to your expert report -- A I see. Q -- first -- A Correct. Q -- and create -- I assume it

[1] Relevant excerpts from the transcript of Mr. Keeling's deposition are attached hereto as **Exhibit B**.

was in Word or some other word-processing program the first draft of this report. Who created that first draft? A That came from Mr. Menhart."). Although Mr. Keeling testified that he "read through a lot of the background, updated where [he] felt things were incorrect or needed to be worded differently," Ex. B, at 54:11-13, and later that he read every word of the report before signing it, Ex. B, at 101:11-14, his involvement seemingly fell far short of substantial participation in preparing the Expert Report that was first drafted by Hately's counsel. For instance, Mr. Keeling's involvement gives the impression of being largely editorial, rather than substantive, in nature:

- Expert Report Page 4, Paragraph 1 – Mr. Keeling could not recall the changes he made to Paragraph 1 other than "generally, fixing up the technical wording." Ex. B, at 40:12-41:10. He later conceded that Paragraph 1 was identical to text taken from Wikipedia. Ex. B, at 41:13-42:18.

- Expert Report Page 4, Paragraph 2 – Mr. Keeling recalled changing "Maybe a word or two" of Paragraph 2. Ex. B, 43:4-14.

- Expert Report Page 5 – Mr. Keeling's changes to Page 5 of the Expert Report were limited to "grammatical" revisions. Ex. B, at 61:3-8.

- Expert Report Page 6 – Mr. Keeling did not recall making any revisions to Page 6. Ex. B, at 63:14-16.

- Expert Report Page 7 – Mr. Keeling only recalled making changes to Paragraph 2 of Page 7. Ex. B, at 74:12-75:12.

- Expert Report Page 8 – Mr. Keeling recalled making "minor changes" to the "Page ID" numbers set forth on Page 8. Ex. B, at 85:8-17.

- Expert Report Page 9 – Mr. Keeling did not recall making any revisions to this page of the Report. Ex. B, at 93:21-94:3.

Furthermore, Mr. Keeling admitted that certain opinions expressed in the Report were not his own and he could not testify to their basis. *See, e.g.*, Ex. B, at 70:9-10 ("Q Did you derive that from *Anzaldua* or were you told that by Mr. Menhart? A Told by Mr. Menhart."), 71:22-72:6 ("Q In this footnote, you say that the question in *Anzaldua* was largely one of the substance

of the pleadings rather than an outright rejection of the courts' interpretations of statutes. Do you have any idea what the basis of that opinion is? A I do not."). Consistent with his deposition testimony, the draft expert report obtained in discovery with Mr. Keeling's "tracked changes" enabled demonstrates the largely editorial, rather than substantive, role that Mr. Keeling played in preparing the Expert Report.[2] For those reasons, this Court should exclude Mr. Keeling's testimony.

## II. THE LEGAL OPINIONS SET FORTH IN THE EXPERT REPORT SHOULD BE STRICKEN AND MR. KEELING SHOULD BE PRECLUDED FROM TESTIFYING AS TO THOSE OPINIONS.

"Federal Rule of Evidence 702(a) does not permit an expert witness to opine on conclusions of law, such as statutory interpretation, which are the sole province of the Court." *In re Grupo Unidos Por El Canal, S.A.*, No. 14-MC-00226-MSK-KMT, 2015 WL 1810135, at *3 (D. Colo. Apr. 17, 2015). Expert opinion on matters of statutory interpretation "improperly invades the judge's province of instructing the jury on the controlling law."[3] *The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, No. 3:09-CV-358, 2010 WL 2653373, at *5 (E.D. Va. July 2, 2010) (excluding expert witness testimony interpreting the Copyright Act). Accordingly, Rule 702 prohibits an expert "from offering legal opinions because such testimony is not helpful to the trier of fact." *FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp. 2d 216, 221 (W.D. Pa. 2010).

For instance, in *Joseph v. Carnes*, an SCA case litigated in the United States District Court for the Northern District of Illinois, the plaintiffs sought to introduce expert testimony

[2] A copy of the foregoing draft expert report is attached as Exhibit 1 to the Declaration of James Miller, attached hereto as **Exhibit C**.

[3] Generally, it is only in atypical cases, such as those involving specialized legal regimes for the regulation of securities and their interplay with "obscure" state law provisions, that a court should contemplate the admission of expert testimony on legal issues. *See United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

about the SCA, including, among other things, "*the manner in which the stored emails at issue fit within a reasonable interpretation of the SCA*." 2015 WL 2091903, at *2 (N.D. Ill. Apr. 30, 2015) (emphasis added). The Northern District of Illinois excluded the expert testimony and concluded:

> [P]ermitting a witness to tell the jury about her legal research on meanings of key terms impermissibly allows the jury to infer that it could look to that witness for legal guidance. It is also improper for a legal expert to explain the purpose and goals of a statute. Thus, any testimony by Dr. Allen regarding her research into the SCA, the history and purpose of the SCA, and the meaning and application of any terms within the SCA is inadmissible as irrelevant.

*Id.*

This Court should reach a similar conclusion here and strike the Expert Report and exclude Mr. Keeling's proffered testimony.

### A. MR. KEELING'S PURPORTED INTERPRETATION OF FEDERAL CASE LAW THAT, IN TURN, INTERPRETS THE SCA SHOULD BE STRICKEN.

Like the excluded expert testimony in *Joseph*, Mr. Keeling impermissibly proffers testimony about legal research into the SCA:

- "Plaintiff's attorneys provided me with certain pieces of information found in opinions discussing the Stored Communications Act, which I understand to be the law upon which this case is based." Ex. A, at 5.
- "One case provided to me, *Theofel v. Farey-Jones*, stated . . . ." Ex. A, at 5.
- "In *Bailey v. Bailey*, another court adopted the reasoning articulated in *Theofel*, writing . . . ." Ex. A, at 6.
- "I also understand that, in other instances, courts have concluded that a finding of the existence of backup storage in cases such as this Case is consistent with the Third Circuit's assumption . . . ." Ex. A, at 6.
- "The vast majority of judicial treatment of the question of when an electronic communication is in 'backup storage' is consistent with these views." Ex. A, at 6.
- "Upon review of these opinions, I agree, from a technical perspective with the reasoning in *Theofel v. Farey-Jones*." Ex. A, at 7.

In total, Mr. Keeling—who is a software engineer and not an attorney—cites eight federal court decisions in the Expert Report, includes block quotations from the United States Court of Appeals for the Ninth Circuit and the United States District Court for the Eastern District of Michigan, and even attempts to distinguish a holding of the United States Court of Appeals for the Eighth Circuit from "nearly all other opinions" on the same SCA issue. *See* Ex. A, at 6 n.12. Nonetheless, when questioned about his opinion concerning federal case law on the SCA, Mr. Keeling admitted that he had only read excerpts of two of the eight cases cited, Ex. B, at 70:16-71:1, that he did not know the facts or holdings of the cases block quoted in the Expert Report, and that his opinions about the cases were not derived from the cases themselves, but were instead provided by Hately's counsel. *See, e.g.*, Ex. B, at 61:3-65:19.

Accordingly, Mr. Keeling's improper testimony about federal case law should be stricken not only because it invades the province of this Court to instruct the jury on the applicable law, but also because Mr. Keeling is admittedly unqualified to opine on legal research and his "opinions" on the matter are merely those of Hately's counsel. *See, e.g.*, Ex. B, at 57:21-58:4 ("Q: All right. Did you ever attend law school, sir? A: No. Q Have you ever taken a legal course at any level of school? A: I'm going to say no."); Ex. B, at 63:8-19 ("Q: Is that the excerpt from the *Theofel* case that Mr. Menhart provided to you? A: Yes. Q: Okay. And did he, in fact, draft these first two paragraphs of page 6 of your report? A: Yes. Q: Okay. Do you recall making any revisions to page 6 of this report, to Mr. Menhart's draft? A: No. Q: All right. Did you read the entire *Theofel* case? A: No."). Mr. Keeling's proffered testimony should be excluded as a result.

### B. MR. KEELING'S OPINIONS ABOUT THE MEANING OF THE SCA SHOULD BE STRICKEN.

Mr. Keeling also engages in impermissible statutory interpretation despite having never read the SCA. Ex. B, at 74:9-11 ("Q Okay. Have you ever read the Stored Communications Act? A No, I have not."). Among other things, Section 2701(a)(2) of the SCA requires a plaintiff to prove that the defendant obtained, altered, or prevented access to a wire or electronic communication while it was in *electronic storage* in a facility through which an electronic communication service is provided. *See* 18 U.S.C. § 2701(a)(2) (emphasis added). The term "electronic storage" includes "any storage of such communication by an electronic communication service for purposes of *backup protection* of such communication." 18 U.S.C. § 2510(17)(B) (emphasis added). The SCA does not define "backup protection." In the Expert Report, Mr. Keeling endeavors to construe the meaning of "backup" for the purposes of the SCA term "backup protection" and opines "that a dictionary definition of 'backup' expressly includes the word 'copy.'" Ex. A, at 7. Therefore, he declares, "any 'copy' of computer data, including email messages, has the technical effect of serving as a 'backup' of the data." Ex. A, at 7.

Even if Mr. Keeling were qualified to engage in statutory interpretation—which he is not—his construction of the SCA improperly invades this Court's province of construing and then instructing the jury on the controlling law. *See, e.g.*, *The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, No. 3:09-CV-358, 2010 WL 2653373, at *5 (E.D. Va. July 2, 2010) ("[E]xpert witness testimony as to the proper way to interpret § 102(a)(8) has no place at trial."); *see also* Ex. B., at 57:21-58:4 ("Q: All right. Did you ever attend law school, sir? A: No. Q Have you ever taken a legal course at any level of school? A: I'm going to say no."). On that basis alone Mr. Keeling's proffered testimony should be excluded.

Moreover, Mr. Keeling's testimony on the controlling law risks confusing the jury. Indeed, it is not difficult to imagine a situation in which a court, an expert, and a rebuttal expert reached divergent conclusions about the meaning of the same term within the SCA. *See SLSJ, LLC v. Kleban*, No. 3:14-CV-390 (CSH), — F. Supp. 3d — , 2017 WL 4329732, at *4 (D. Conn. Sept. 29, 2017 ("[F]ederal courts have held that Rule 403 bars expert testimony purporting to interpret the governing law, because such testimony will necessarily confuse the jury by providing competing interpretations of the law.") (internal quotations omitted). This Court should exclude Mr. Keeling's interpretation of the SCA.

### C. MR. KEELING'S OPINION APPLYING HIS INTERPRETATION OF THE SCA TO THE FACTUAL ALLEGATIONS OF THE COMPLAINT SHOULD BE STRICKEN.

Mr. Keeling further seeks to testify about the manner in which the emails at issue fit within what he believes to be a reasonable interpretation of the SCA. As described above, Section 2701(a)(2) of the SCA requires, among other things, proof that an electronic communication was in electronic storage. *See* 18 U.S.C. § 2701(a)(2). The determination of whether an electronic communication was in electronic storage turns, in part, on whether it was stored for purposes of "backup protection." *See* 18 U.S.C. § 2510(17)(B). Ultimately, Mr. Keeling opines that "[if] Hately's allegations, that he maintained a Gmail account with a digital copy of certain messages, are proven true, it is my opinion that the copies of messages were 'backups' of those messages. In my view, a 'backup' and a 'copy' of a digital file are synonymous." Ex. A, at 7. Therefore, Mr. Keeling seeks to apply the law (as interpreted by Mr. Keeling) to the facts alleged in the Complaint (as presented by Hately). "However, an expert generally is not permitted to apply law to facts to reach a legal conclusion, as such testimony is not considered helpful to the jury." *United States v. Melvin*, 508 F. App'x 209, 211 (4th Cir. 2013). Accordingly, "[t]he best way to determine whether opinion testimony

contains legal conclusions, is to determine whether the terms used by the witness have a separate, distinct, and specialized meaning in the law different from that present in the vernacular." *Wood v. Credit One Bank*, No. 3:15CV594, 2017 WL 4203551, at *27 (E.D. Va. Sept. 21, 2017); *see also The Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, No. 3:09-CV-358, 2010 WL 2653373, at *5 (E.D. Va. July 2, 2010) ("[T]he Court will grant Commonwealth's motion to exclude Buckley's testimony interpreting the Copyright Act and concluding that Commonwealth's drawings are not 'the design of a building.'"). In this case, it is not Mr. Keeling's role to apply his interpretation of the SCA to the facts. Rather, it is the role of this Court to construe the meaning of "any storage of such communication by an electronic communication service for purposes of backup protection of such communication" and then for the jury to decide whether Hately's emails were stored for purposes of backup protection. *See* 18 U.S.C. § 2510(17)(B). As a result, Mr. Keeling's testimony should be excluded.

## III. THE EXPERT REPORT SHOULD BE STRICKEN AND MR. KEELING SHOULD BE PRECLUDED FROM TESTIFYING BECAUSE EACH RELIES ON WIKIPEDIA.

During his deposition, Mr. Keeling admitted that he and Hately's counsel copied "a good amount, especially on the background," of the Expert Report from Wikipedia. Ex. B, at 52:13-18. The testimony of an expert "is admissible only if it is both relevant and reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). As noted above, the *Daubert* factors considered in determining whether the methodology underlying an expert opinion is reliable include the "theory's testability, whether it has been a subject of peer review or publication, the known or potential rate of error, and the degree of acceptance within the relevant scientific community." *Id.* at 145 (internal quotations and alterations omitted).

The Fourth Circuit previously expressed its concern over "Wikipedia's lack of reliability." *United States v. Lawson*, 677 F.3d 629, 650-51 (4th Cir. 2012) (collecting cases

critical of the reliance on Wikipedia in judicial proceedings). Like other courts, the Fourth Circuit has pointed out that "Wikipedia is written collaboratively by largely anonymous Internet volunteers who write without pay. Anyone with Internet access can write and make changes to Wikipedia articles (except in certain cases where editing is restricted to prevent disruption or vandalism)." *Id.* at 650. Therefore, "[g]iven the open-access nature of Wikipedia, the danger in relying on a Wikipedia entry is obvious and real." *Id.* This is the case with expert testimony because "Wikipedia is not a learned treatise and lacks the reliability required by the federal rules to form the basis of an expert's opinion." *Hamilton v. Menard, Inc.*, No. 3:10 CV 1997, 2011 WL 3652449, at *2 (N.D. Ohio Aug. 19, 2011); *see also Dallas Buyers Club, LLC v. Doughty*, No. 3:15-CV-00176-AC, 2016 WL 1690090, at *2 (D. Or. Apr. 27, 2016) (determining an expert witness' "statements to be highly unreliable, as the court is without any ability to determine the credentials of the individuals who authored the Wikipedia entry to which Young cites. Any probative value Young's statements possess are therefore outweighed by its prejudicial effect.").

Here, the Expert Report relies heavily on Wikipedia—often verbatim—for information about the Internet, email, Google accounts, IP addresses, and geolocation without citation to other primary research sources, such as learned treatises, to verify Wikipedia's reliability as a source that an expert would reasonably rely on in forming an opinion.[4] *See* Ex. A, at 4-5 nn.2-4, 6-7; *see also, e.g.*, Ex. B, at 48:22-49:11 ("Q The next sentence in the Wikipedia entry for 'Email' says, quote, 'Email servers accept, forward, deliver, and store messages.' Do you see

---

[4] When asked whether he was concerned about cutting and pasting from Wikipedia verbatim in the Expert Report, Mr. Keeling responded, "No. . . . Because it's all true, and it's well-known." Ex. B, at 51:17-52:1-2. As such, Mr. Keeling's opinion should also be excluded because it will not help the trier of fact understand the evidence. *See Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) ("Although expert testimony is generally presumed helpful to the jury, we have held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors.").

that sentence? A Yes. Q And then the next sentence in the second paragraph of page 4 of your report says, quote, 'Email servers accept, forward, deliver, and store messages.' A Yes. Q So, they're identical. A Yes.").

The Expert Report also does not indicate whether the Wikipedia pages relied upon were subject to scholarly peer review and publication in relevant journals in the technical community. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 863 (M.D. Tenn. 2005), *aff'd*, 484 F.3d 426 (6th Cir. 2007) ("*Daubert* discusses peer review and publication in the context of submission of theories and propositions to the relevant scientific or technical community through mediums such as peer-reviewed journals.").

Finally, the Expert Report is silent as to the known or potential rate of error of the Wikipedia pages relied upon that, admittedly, are available on a platform that many authors, whether experts or not, may largely edit at will. *See, e.g.*, Ex. B, at 52:6-7 ("Q All right. So, who writes Wikipedia? A Many authors."); Ex. B, at 52:8-9, 12 ("Q All right. So, could I make a change to a Wikipedia entry if I wanted to? . . . A Depends on the Page"). Watts' rebuttal expert, John W. Simek, who is an experienced information technology professional and published author on the subject, also opined that "it is a better practice not to rely upon Wikipedia as a source or reference, especially in regards to technical issues." *See* Doc. No. 58, Ex. 4, Decl. of John Simek, at § 5. Therefore, Keeling's reliance on Wikipedia renders his methodology unreliable and his opinion and the Expert Report should be excluded.

## IV. MR. KEELING'S OPINION ABOUT THE "GENERAL FORM" OF THE WEBSITE SCREENSHOTS OBTAINED BY HATELY SHOULD BE EXCLUDED BECAUSE HIS OPINION IS NOT BASED ON SPECIALIZED KNOWLEDGE, SKILL, OR EDUCATION.

"Generally, a lay opinion must be based on personal knowledge whereas expert opinion *may* be based on personal knowledge *but must* involve some specialized knowledge or skill or

education that is not in possession of the jurors." *United States v. Howell*, 472 F. App'x 245, 246 (4th Cir. 2012) (citing *United States v. Perkins*, 470 F.3d 150 (4th Cir.2006) (internal quotations omitted and emphasis added)). Here, Mr. Keeling opines that various screenshots obtained by Hately "appear[ ] to be in the same technical form of a typical display provided by Google" or the website http://cqcounter.com/whois. Ex. A, at 8. However, Mr. Keeling's deposition testimony reveals that his opinion does not involve specialized knowledge, skill, or education. *Contra* Fed. R. Civ. P. 702. Mr. Keeling has never worked for Google, implemented a Google platform as a contractor or subcontractor to Google, or even contacted or gather information from anyone at Google. Ex. B, at 72:19-73:10, 87:15-20. Mr. Keeling's opinion about http://cqcounter.com/whois is based solely on visiting the website "upon learning of the case," although he could not opine on its reliability. Ex. B, at 91:13-92:12; *see also* 92:13-93:9. As would be expected, Mr. Keeling repeatedly admitted that the basis of his opinion on the "general form" of the website screenshots provided to him was simply the experience of an ordinary user. *See* Ex. B, at 89:7-12 ("Q And what is the basis of this opinion? A Having used this myself. Q And, again, would your use of this particular feature of Google be any different than mine or Mr. Miller's? A No."); *see also* Ex. B, at 88:6-8, 88:16-21, 89:19-91:11. As such, Mr. Keeling's testimony is not helpful to the trier of fact and is merely cumulative of Hately's anticipated lay testimony. Mr. Keeling's opinion and the Expert Report should be excluded as a result.

**CONCLUSION**

In consideration of the foregoing, Defendant David Watts, M.D. respectfully moves this Court to grant his Motion to Strike Expert Witness Report and Exclude Expert Witness

Testimony for the purposes of both summary judgment and trial and to grant him such other relief as this Court deems appropriate.

Respectfully Submitted,

DAVID WATTS, M.D.
By counsel

/s/

Jonathan D. Frieden, Esquire (VSB No. 41452)
James P. Miller, Esquire (VSB No. 89409)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
(703) 218-2125
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
jim.miller@ofplaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF), to the following:

William Peter Robinson, III, Esquire
ROBINSON LAW SERVICES
1934 Old Gallows Road, Suite 350K
Vienna, VA 22182
William@RobinsonsLaw.com

Eric J. Menhart, Esquire
LEXERO LAW FIRM
316 F Street NE, Suite 101
Washington, D.C. 20002
Eric.Menhart@Lexero.com
*Counsel for Plaintiff*

/s/
Jonathan D. Frieden, Esquire (VSB No. 41452)
James P. Miller, Esquire (VSB No. 89409)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
(703) 218-2100
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
jim.miller@ofplaw.com
*Counsel for Defendant*

#3663297v1