IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| PATRICK HATELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-502 (AJT/JFA) |
| | ) | |
| DAVID WATTS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# **ORDER**

The parties have filed cross-motions for summary judgment with respect to the only remaining issue—whether defendant David Watts violated the Stored Communications Act by accessing, without authorization, plaintiff Patrick Hately's personal email account and viewing several emails contained in that account.[1] On February 2, 2018, the Court held a hearing on these motions, following which it took them under advisement. Based on the undisputed facts, and for the reasons stated below, the emails at issue were not "in electronic storage" for the purposes of the Stored Communications Act and defendant's accessing those emails did not therefore violate the Stored Communications Act as a matter of law. Accordingly, plaintiff Hately's Amended Motion for Partial Summary Judgment [Doc. No. 66] is DENIED, defendant Watts' Motion for Summary Judgment [Doc. No. 57] is GRANTED, and this action is DISMISSED.

---

[1] Also pending are (1) Defendant's Motion to Strike Expert Witness Report [Doc. No. 60]; and (2) Defendant's Motion to Strike Alleged Facts [Doc. No. 73]. For the reasons explained below, resolution of these motions for either party would not affect the outcome of the cross-motions for summary judgment, and therefore these motions will be denied as moot.

1

## BACKGROUND[2]

At its core, this matter concerns a dispute over the meaning of the term "in electronic storage," as it appears in the Stored Communications Act ("SCA"),18 U.S.C. §§ 2701, *et seq.*, specifically, whether it is a violation of the SCA for someone to access, without authorization, the previously opened and delivered emails of another through a web-based email client.

The *dramatis personae* of this essentially domestic dispute include (1) plaintiff Patrick Hately ("Hately"); (2) defendant David Watts ("Watts"); (3) non-party Audrey Hallinan Watts ("Hallinan"), who is married to Watts, but is separated from him and was involved in divorce proceedings with him at the time of the actions in the Complaint; and (4) non-party Nicole Torrenzano ("Torrenzano"), Watts' co-worker who was previously in a relationship with Hately. Pl.'s Mot. Statement of Undisputed Facts ("SOF") ¶¶ 1–6.[3] On October 12 or 13, 2015, Torrenzano, who had introduced Hallinan to Hately, provided Watts with the password to Hately's e-mail account. Torrenzano informed Watts that Hately and Hallinan were in a relationship and that she knew of certain emails that could be helpful to Watts in his ongoing divorce proceedings with Hallinan. Watts subsequently used the password to access Hately's email account in search of information concerning the relationship between Hately and Halliman. See SOF ¶ ¶ 7, 28.

At the time of Watts' access, Hately maintained an email account provided by his *alma mater*, Blue Ridge Community College, part of the Virginia Community College System ("VCCS") (the "VCCS Account" or "Email Account"). Pl.'s SOF ¶ 25. When Hately received new e-mails, he would typically open and view them before either deleting or retaining them. *Id.* at ¶ 30. Hately did not share his VCCS account with Torrenzano, nor did he maintain it for their

---

[2] The following facts are either undisputed or, where disputed, are resolved in favor of the plaintiff.
[3] "SOF" refers to the statements of undisputed facts provided the parties' briefing, as required by Local Civil Rule 56(B).

mutual benefit. *Id.* at ¶ 34. Terranzano had come learn Hately's password for his VCCS account and gave Watts detailed instructions regarding how to access and log into Hately's VCCS account. *Id.* at ¶¶ 49, 53, 56. Watts successfully accessed Hately's Email Account and opened and read several of Hately's emails in search of communications between Hately and Halliman. *Id.* at ¶ 52.

On April 28, 2017, Hately filed his five-count Complaint [Doc. No. 1], asserting both federal and state law claims. On August 18, 2017, the Court dismissed four of the five counts for failure to state a claim. Order of October 18, 2017 [Doc. No. 17]. Count II, the remaining count, alleges that Watts violated the SCA when he accessed Hately's emails without authorization.

## LEGAL STANDARD

In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *Porter v. U.S. Alumoweld Co.,* 125 F.3d 243, 245 (4th Cir.1997). Summary judgment is appropriate where "there is no genuine dispute as to any material fact the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A "genuine" dispute as to a material fact is present "if the evidence is such that a reasonable jury could ... return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. *Carter v. Ball,* 33 F.3d 450, 461–62 (4th Cir.1994); *Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988).

## ANALYSIS

The SCA states that:

> whoever-
>
> > (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> >
> > (2) intentionally exceeds an authorization to that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a).[4] Watts accessed Hately email account without authorization[5] and in determining whether Watts violated the SCA, the dispositive issue reduces to whether the emails at issue here were in "electronic storage" as required by § 2701(a). "Electronic storage" is defined as:[6]

> A. any temporary intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>
> B. any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]

---

[4] While § 2701(a) is a criminal offense, 18 U.S.C. § 2707(a) creates the following private civil remedy for its violation:
Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.
Section 2707(a)

[5] Watts suggests that he received implied authorization to access Hately's email account when Torrenzano provided him with Hately's e-mail password. Hately disputes that Torrenzano was authorized to use his password to access his account; but even were she so authorized, there are no facts that would allow a reasonable jury to conclude that Torrenzano was authorized to give that password to Watts and authorize him, on behalf of Hately, to access Hately's account.

[6] The SCA was adopted as part of the larger Electronic Communications Privacy Act ("ECPA") 18 U.S.C. §§ 2510, *et seq.*, and incorporates by reference several definitions from the ECPA, including "electronic storage" and "electronic communications service."

4

18 U.S.C. § 2510(17). "Electronic communication service," or "ECS", is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." § 2510(15). By contrast, the SCA provides that a "remote computing service," or "RCS," is "the provision to the public of computer storage or processing services by means of an electronic communications system." § 2711(2). Based on these definitions, the SCA protects only electronic communications while stored temporarily before being transmitted for delivery or stored by the electronic communication service in order to preserve a copy of the email. *See Anzaldua v. Northwest Ambulance and Fire Protection District,* 793 F.3d 822, 839 (8th Cir. 2015)

### a. Hately cannot establish that Watts accessed "electronic storage" under § 2510(17)(A).

Based on the text and structure of the SCA, the Court concludes, as other courts have, that § 2510(17)(A)'s definition of "electronic storage" only encompasses those emails that are unread or not downloaded; in other words, it covers emails only up to the point where the emails have been initially transmitted to their recipient and read or initially downloaded. *See Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 758 (N.D. Ohio 2013) (citing *In re DoubleClick, Inc. Privacy Litig.*, 154 F.Supp.2d 497, 511–12 (S.D.N.Y. 2001)); *U.S. v. Weaver*, 636 F. Supp. 2d 769, 771 (C.D. Ill. 2009); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1205 (S.D.Cal.2008); *Fraser v. Nationwide Mut. Ins. Co.*, 135 F.Supp.2d 623, 635–36 (E.D. Pa.2001); *Jennings v. Jennings*, 736 S.E.2d 242, 245 (S.C. 2012). Once opened, and thereby downloaded, they are no longer in "temporary, intermediate storage . . . incidental to the[ir] electronic transmission[.]" Instead, their transmission is complete and only copies stored by the "electronic communication service for purposes of backup protection" under paragraph (B) are "in electronic storage."

The only evidence in the record of what Watts accessed is that Watts did not open or view any email from the Email Account that was unopened, marked as unread, previously deleted, or in the Email Account's "trash" folder, and that Watts did not change the status of, or modify, any email from the Email Account in any way. *See* Def.'s Mem. in Supp., SOF ¶¶ 42, 43. Although he has not produced any contrary evidence, Hately contends that these assertions are based solely on Watts' "self-serving statements and characterizations," which cannot constitute undisputed evidence of what Watts did or did not access for the purposes of summary judgment. He also contends that, in any event, "the status of Plaintiffs' emails" and "whether or not defendant changed any emails [are] immaterial." Pl.'s Resp. 11–12. But as discussed above, the status of Hately's emails at the time they were accessed by Watts is central to determining whether they were "in electronic storage." Nor is Hately's evidentiary challenge sufficient to defeat Watts' summary judgment motion. Once Watts challenged the factual basis for Hately's SCA claim, Hately had the affirmative burden to produce evidence from which a reasonable jury could find that Watts opened a previously unopened or unread email or one that had not been previously downloaded. *See Celotex Corp.*, 477 U.S. at 322 (". . . Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Hately has proffered only speculation and not any facts that would allow a reasonable fact finder to make the required findings. Based on this record, Hately has failed to establish as a matter of law that Watts accessed emails "in electronic storage" under § 2510(17)(A).

  **b.  Hately cannot establish that Watts accessed "electronic storage" under § 2510(17)(B).**

Under § 2510(17)(B), "electronic storage" also includes "any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" The only material evidence in the record on this issue is that (1) students can access directly through their email accounts copies of emails until the student decides to delete a particular email; (2) the VCCS email system stores copies of student emails for the purposes of backup protection; (3) student users, such as Hately, and therefore Watts using Hately's password, cannot access these copies stored for backup protection through their student accounts simply by logging into a student's email account;[7] (4) these stored VCCS system backup copies are available to users only by special request and are therefore not immediately accessible to students. Def.'s SOF ¶¶ 22, 23. Based on these undisputed facts, the emails Watts accessed were "service copies," that is, copies of an email immediately accessible to the user by logging in to the email client, rather than the backup "storage copies" maintained by VCCS, which are available only upon special request. The issue therefore reduces to whether these service copies of delivered and previously opened emails are "in electronic storage" under § 2510(17)(B). The Fourth Circuit has not decided this issue,[8] and other courts have adopted more than one interpretation of § 2510(17)(B).

In *Theofel v. Farely-Jones*, 359 F.3d 1066 (9th Cir. 2004), a case heavily relied on by Hately, the Ninth Circuit concluded that for the purposes of § 2510(17)(B) "prior access is

---

[7] Hately does not dispute this evidence but contends that "[t]here are numerous copies of emails stored in many different locations, and all serve as a viable backup." Pl.'s Resp. 6. Because Hately alleges that Watts accessed the emails through his account, not by special request or through any other location where his emailed may have been stored, these additional proffered facts are immaterial.

[8] In *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009), the Fourth Circuit affirmed the decision of the district court, which involved § 2510(17)(B) . The Fourth Circuit, however, did not address specifically whether the emails at issue in that case were "in electronic storage," an issue that was neither disputed below nor presented on appeal.

irrelevant to whether the messages at issue were in electronic storage." *Id.* at 1077. Rather, an email maintained by an internet service provider ("ISP") is held "for the purposes of backup protection," and therefore is "in electronic storage," so long as the user has not deleted the service copy "in the normal course," regardless of whether the storage copy was made when the email was "in transit." *Id.* at 1076. Other courts have extended the core reasoning of *Theofel*, which was based factually on storage copies held by an ISP and produced pursuant to a subpoena, to conclude that service copies of a user's email accessed through their account are also "in electronic storage" under § 2510(17)(B). *See, e.g., Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 556 (S.D.N.Y. 2008) (finding coverage under the SCA where the plaintiff "logged directly onto Microsoft's Hotmail system where the e-mails were stored, and viewed and printed them directly off of Hotmail's system."); *Bailey v. Bailey*, No. 07-11672, 2008 WL 324156 (E.D. Mich. Feb. 6, 2008) (holding that accessing delivered and read emails without authorization by using a key logger to sign into a user's account violated the SCA). Other courts and commentators have rejected these more expansive readings of paragraph (B). *See Anzaldua*, 793 F.3d at 840–42 (8th Cir. 2015) (collecting cases); *United States v. Weaver*, 636 F. Supp. 2d 769, 773 (C.D. Ill. 2009) ("Previously opened emails stored by Microsoft for Hotmail users are not in electronic storage . . . ."); *see also* Orin Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending it*, 72 Geo. Wash. L. Rev. 1208, 1217 (2004) ("[T]he Ninth Circuit's analysis in *Theofel* is quite implausible and hard to square with the statutory text.").

      The SCA does not define when an email is "stored for the purposes of backup protection." Nor has the Fourth Circuit or Supreme Court explained what it means. The Court must therefore undertake that task based on standard rules of construction. Based on the plain

and ordinary meaning of the text and also the structure of the SCA, the Court concludes that the "backups" in paragraph (B) are most logically and reasonably read as referring only to backups of the transitory communications described in paragraph (A), created and stored separate and apart from the copies maintained to facilitate continuing access by the user through his account.[9] As the Supreme Court of South Carolina summarized the scope of § 2510(17), "electronic storage refers only to temporary storage, made in the course of transmission, by an ECS provider [per paragraph (A)], and to backups of such intermediate communications[,]" per paragraph (B). *Jennings v. Jennings*, 736 S.E.2d 242, 248 (S.C. 2012) (Toal, C.J., concurring in the result) (emphasis omitted).

Read this way, "such communication" in § 2510(17)(B) refers to communication "temporar[ily and] intermediate[ly]" stored "incidental to the electronic transmission thereof," as described in (A). Under this view of the SCA, once an email has been delivered and opened, its transmission is complete, the ECS is no longer storing it "incident to transmission" and therefore it is not in "electronic storage" for the purposes of § 2510(17)(A). A service copy maintained to be available to the user until the user deletes the message is neither a "copy of *such*" communication, nor is it maintained by the ECS for backup protection. Instead, paragraph (B) refers to a copy of a communication, made by the ECS while the communication was in transit, and stored by the ECS for its own backup or administrative purposes.

---

[9] Concerning "backup*,*" see, *Backup Definition*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/backup (last visited Mar. 14, 2018) (defining "backup" as "one that serves as a substitute or support" or "a copy of computer data (such as a file or the contents of a hard drive)").
Concerning "protection," see *Protect Definition*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/protect (last accessed Mar. 14, 2018) (defining "protect" as "to cover or shield from exposure, injury, damage or destruction" or "to maintain the status or integrity of . . ."). Read in the context of the SCA as a whole, a copy can still be a "backup" even where the "original" no longer exists. *See. e.g.,* 18 U.S.C. § 2704 ( a "governmental entity acting under section 2703(b)(2) [regarding required disclosure of customer communications] may include in its subpoena or court order a requirement that the service provider to whom the request is directed create a backup copy of the contents of the electronic communications sought in order to preserve those communications."); Kerr*, A User's Guide*, at 1218 n.61("Section 2704 makes clear that the SCA uses the phrase 'backup copy' in a very technical way to mean a copy made by the service provider for administrative purposes.").

Even if the service copies at issue here were copies of temporary versions of the emails stored by VCCS "for the purposes of backup protection," they would still not be "in electronic storage" under § 2510(17)(B) because VCCS was not acting as an ECS with respect to those service copies. VCCS was maintaining those service copies of delivered and opened email for the purposes of transmitting them to a single user's account upon that user's command. In doing so, VCCS was not at that point in time acting as an ECS since it was not "provid[ing] to users . . . the ability to send or receive wire or electronic communications." § 2510(15). Instead, it was providing "computer storage or processing services by means of an electronic communications system," § 2711(2), and therefore was acting as an RCS. *See In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 522 ("Clearly, the cookies' residence on plaintiffs' computers does not fall into § 2510(17)(B) because plaintiffs are not 'electronic communication service' providers."). Because paragraph (B)'s definition is limited to "storage of . . . communication by an electronic communication service," it cannot reach the service copies at issue here because they were being stored by VCCS acting as an RCS.

As courts and commentators have noted, the statutory definition of "electronic storage" is much narrower than the name suggests. *See Anzalduca,* 793 F.3d at 830. "The SCA is not a catch-all statute designed to protect the privacy of stored communications; instead, it is narrowly tailored to provide a set of Fourth Amendment-like protections for computer networks." Kerr, *A User's Guide*, at 1214, *quoted in Anzdaldua,* 793 F.3d at 839. For the above reasons, Hately has also failed to produce evidence sufficient for a reasonable jury to find that Watts' access to the Email Account involved emails that were "in electronic storage" under § 2510(17)(B).

## CONCLUSION

For the above reasons, there are no genuine issue of material facts; and based on those undisputed facts, plaintiff Hately is not entitled to judgment as a matter of law, and defendant Watts is entitled to judgment as a matter of law with respect to plaintiff's claim in Count II for a violation of the Stored Communications Act. Accordingly, it is hereby

ORDERED that plaintiff's Amended Motion for Partial Summary Judgment [Doc. No. 66] be, and the same hereby is, DENIED; and it is further

ORDERED that defendant's Motion for Summary Judgment [Doc. No. 57] be, and the same hereby is, GRANTED; and it is further

ORDERED that defendant's Motion to Strike Expert Witness Report [Doc. No. 60] and defendant's Motion to Strike Alleged Facts [Doc. No. 73] be, and the same hereby are, DENIED as moot.

The Clerk is directed to forward copies of this Order to all counsel of record and to enter judgment in favor of defendant David Watts pursuant to Federal Rule of Civil Procedure 58.

_____/s/_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 14, 2018